**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| MEL PETERS, ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:24-cv-00199 |
| ) | |
| vs. ) | Judge Michael R. Barrett |
| ) | |
| AUTO-OWNERS (MUTUAL) ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPINION & ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 16). Plaintiff has filed a memorandum in opposition (Doc. 20), to which Defendant has replied (Doc. 21). As discussed below, Defendant's Motion will be DENIED.

**I.    FACTS**

Plaintiff Mel Peters, who is in his 80s[1], owns a home in Trenton, Butler County, Ohio. (Doc. 5, Complaint ¶¶ 1, 2, 5–7). Defendant Auto-Owners (Mutual) Insurance Company ("Auto-Owners") issued a homeowners policy to Peters that was in effect on April 1, 2023, the date he claims to have suffered property loss because of a windstorm. (*Id.* ¶¶ 2, 4, 12).

**Timeline**. Peters filed a claim on June 29, 2023. (Doc. 15-2[2]; *see* Doc. 16-1 ¶ 3). Auto-Owners immediately retained Reliable Adjusting Company Enterprises ("Reliable")

---

[1] (*See* Doc. 15, Peters depo,, PAGEID 132 (7:5–6)).

[2] The "Description of Loss" reads, "**Contractor called in with insured** reporting wind damage to the roof. Missing and creased shingles.; The property is habitable; Temporary repairs have not been completed".

1

to inspect and assess the claimed loss. (Doc. 16-1 ¶ 6). On June 30, 2023, Reliable's Cameron Mandrell contacted Peters to schedule an inspection, which took place on July 12, 2023. (*Id.*). Mandrell observed that the roof damage did not appear "to be typical" for wind damage, so he recommended that Auto-Owners engage an engineer to investigate. (*Id.* ¶ 7). Auto-Owners then retained Drew Knostman, a forensic engineer with Nederveld Inc.; Knostman inspected the roof on August 3, 2023. (*Id.* ¶ 8).

Meanwhile, JK Roofing, hired by Peters to replace his roof,[3] contacted Auto-Owners on August 17, 2023. Auto-Owners advised that it was waiting on Knostman's report as part of its continuing investigation of Peters' claim. (*Id.* ¶ 9). Knostman's report was issued on October 19, 2023; in it, he opined that the roof damage was not caused by a wind event. (*Id.* ¶ 10). Instead, the damage was caused by "manual manipulation with an attempt to simulate wind-damage" and by prior wind events occurring before April 1, 2023. (*Id.*). In light of Knostman's findings, Peters' claim was referred to Field Investigator Keith Lennex, part of Auto-Owners' special investigation unit. (*Id.*). Also on October 19, 2023, but before Knostman's findings were shared with Auto-Owners and Peters, JK Roofing advised that roof replacement was complete. (*Id.* ¶ 11).

On October 27, 2023, Lennex called Peters. Peters took the call but asked Lennex to call back because "it was not a good time to talk." (*Id.* ¶ 12). On November 13, 2023, Lennex called Peters again; Lennex left a voice mail, asking Peters to return his call.

---

(Doc. 15-2 PAGEID 190 (all emphasis added)). Peters testified that he made the call alone, however. (Doc. 15, Peters depo., PAGEID 151–52 (26:21–27:23)).

[3] Peters testified that he hired Jim Kinkaid; he was unclear as to whether Kinkaid was "behind" JK Roofing. (Doc. 15, Peters depo., PAGEID 153–54 (28:6–29:1)).

2

Hearing nothing, on November 27, 2023, Lennex sent a Reservation of Rights letter (via certified mail, return receipt requested; regular mail; and email) to Peters, asking him to call "to discuss the claim." (Doc. 15-3).[4] Peters received Lennex's letter no later than December 1, 2023. (Doc. 16-1 PAGEID 216). On December 19, 2023, Auto-Owners received a letter of representation from the Blake Maislin firm. (*Id.* ¶ 16). Lennex called the Maislin firm on January 18, 2024 and asked to speak to the signing attorney, Zachary M. Lotspeich; Lennex left a voice mail, asking Lotspeich to return his call. Hearing nothing, on February 2, 2024, Lennex sent a (second) Reservation of Rights letter (via certified mail, return receipt requested; regular mail; and email) to Lotspeich. (Doc. 15-4).[5] The Maislin firm received Lennex's letter no later than February 12, 2024. (Doc. 16-1 PAGEID 217–18). Finally, Lennex sent a (third) Reservation of Rights letter (via certified mail, return receipt requested; regular mail; and email) to Lotspeich on March 11, 2024. (Doc. 15-5).[6]

Peters filed his Complaint in the Court of Common Pleas for Butler County, Ohio on March 28, 2024. (Doc. 5). Auto-Owners subsequently removed the case here (based on diversity jurisdiction) on April 12, 2024. (Doc. 1 ¶¶ 8–11).

---

[4] (Doc. 15-3 PAGEID 194 ("All rights, terms, conditions, and exclusions in your policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney or other person on behalf of Auto-Owners Insurance Company; or hired by Auto-Owners Insurance Company on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy.")).

[5] (Doc. 15-4 PAGEID 196 ("We request that contact be made, or a statement scheduled by Friday, March 8, 2024, failure to do so could result in a denial of this claim.")).

[6] (Doc. 15-5 PAGEID 199 ("We request that contact be made, or a statement scheduled by **Monday, April 1, 2024**, failure to do so could result in a denial of this claim.") (emphasis in original)).

**The Policy Terms**.  Two terms are pertinent.  First, "[i]f a loss to covered property occurs, the insured must: . . . cooperate with [Auto-Owners] and assist [Auto-Owners] in any matter relating to a claim."[7]  Second, "[Auto-Owners] may not pay for any loss if, whether before, during or after the claim, any person to which this policy applies has[ either] intentionally concealed or misrepresented any fact or circumstance; [or ] engaged in fraudulent conduct; or [ ]made false statements material to the claim and relating to this insurance."[8]

**Peters' Deposition Testimony**.  Plaintiff Mel Peters sold "all kinds" of insurance (and investments) for nearly 30 years, retiring in 1995.  (Doc. 15, Peters depo., PAGEID 134 (9:5–23); *see id.* PAGEID 147 (22:3–7)).  He couldn't explain why he waited nearly three months (until June 29) to file a claim for damages that purportedly occurred on April 1.  (*Id.* PAGEID 151 (26:1–20)).  He did recall, however, that Noah Spagnotti and Jim Kinkaid (of JK Roofing) walked the neighborhood and inspected homes after the windstorm.  (*Id.* PAGEID 154–56 (29:7–31:15)).  Spagnotti noticed the shingles in Peters' yard and told him he had roof damage.  (*Id.*).  Peters subsequently hired Kinkaid to remedy the damage.  (*Id.* PAGEID 153–54 (28:6–29:3), PAGEID 156–57 (31:16–32:5)).  Although certain about little else, Peters was sure that he hired Kinkaid *before* he filed a claim with Auto-Owners.  (*Id.* PAGEID 154 (29:2–6), PAGEID 157 (32:17–19)).[9]  And, to date, Peters has not paid Kinkaid:

---

[7] (Doc. 4-1, Homeowners Insurance Policy, "WHAT TO DO IN CASE OF LOSS" §1(f), PAGEID 55–56).

[8] (Doc. 4-1, Homeowners Insurance Policy, "GENERAL POLICY CONDITIONS" § 2 (CONCEALMENT OR FRAUD), PAGEID 57).

[9] (*See also* Doc. 15, Peters depo., PAGEID 177–78 (52:12–53:7) ("Q. . . . Question before, we were talking about previous contacts with Auto-Owners, or lack thereof.  Do you remember talking to your contractor and whether they ever spoke to anybody at Auto-Owners?  A. No.  Q. You don't remember like

Q. Okay.  Have you paid your contractors for your roof repair – or your roof replacement?  Have you paid your contractors for your roof replacement?

A. Have I paid for it?

Q. Yes.

A. No.

Q. You have not paid for it?

A. No.

Q. So your contractors, they completed the roof repair, right?

A. Yes.

Q. And they have not been paid for it?

A. No.

Q. Have you talked to them about what you guys are going to do in terms of your payment for it?

A. No.

Q. Okay.  But it doesn't make sense that they would complete your roof repair but then not get paid for it, right?

A. I can't answer that question.

Q. Well, do you think they want to be paid, your contractors?

A. Yes.

Q. Okay.  So how do you plan to pay them for it?

A. I can't answer that question.

Q. Okay.  Have you singed anything with your contractor – did you sign a contract for the roof repair with your contractor?  That was a very poorly-worded question.  So if that was confusing, I'm sorry.  That was confusing myself.  Have you signed a contract with either Noah or Jim Kinkaid for your roof replacement?

A. No.

---

any – Noah mentioning that he called somebody at Auto-Owners or Jim Kinkaid ever mentioning that?  A. No.  Q. And you agree with me that they replaced the roof, correct?  A. Correct.  Q. Okay.  **So they replaced the roof <u>after you filed your claim</u> with Auto-Owners; is that right?  A. Correct.**  Q. Okay.  And I'm assuming that there was no discussions with anybody at Auto-Owners that you can recall in terms of completing a roof replacement.  You didn't talk about that with anybody at Auto-Owners?  A. No.") (all emphasis added)).

> Q. Okay. Did you sign any paperwork with them?
>
> A. No.
>
> Q. So you would agree that you haven't assigned them any proceeds from this lawsuit, correct?
>
> A. I can't answer that question.

(*Id.* PAGEID 182–84 (57:11–59:1)).

Peters insists that Auto-Owners contacted him only *once*, and that was to schedule the roof inspection (by Reliable). (*Id.* PAGEID 168 (43:2–22)). He denies receiving Keith Lennex's November 27, 2023 Reservation of Rights letter. (*Id.* PAGEID 164–65 (39:10–40:24), PAGEID 172 (47:22–24)).

II.  **LAW & ANALYSIS**

**Summary Judgment Standard.** Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings but, instead, must present significant probative evidence in support of its complaint to defeat

the motion for summary judgment. *Anderson*, 477 U.S. at 248–49. That is to say, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006).[10]

**Rule 56(d).** In its Calendar Order entered on May 31, 2024, the Court set February 28, 2025 as the dispositive motion deadline. (Doc. 10 PAGEID 111). Auto-Owners filed its summary judgment motion on October 14, 2024, well in advance of that due date. In response, Peters filed an unopposed (at the time) Rule 56(d)[11] motion. (*See* Doc. 17). He asked for a 90-day continuance to depose Jim Kinkaid (of JK Roofing) and Auto-Owners investigator Keith Lennex. (*Id.* PAGEID 221).

The undersigned denied Peters' motion without prejudice, because the affidavit that counsel submitted was not executed. (11/05/2024 NOTATION ORDER). Peters was ordered to submit an executed affidavit "forthwith." (*Id.*). That didn't happen. Peters later noticed the deposition of Drew Knostman for December 19, 2024, (Doc. 19), which counsel for Auto-Owners represents was cancelled (two days prior). (Doc. 21 PAGEID 249). Peters also noticed the deposition of Jim Kinkaid for January 24, 2025. This deposition, too, was cancelled (on the day of) owing to a "technical" issue. (*Id.*; *see* Doc. 21-1 PAGEID 257). Peters filed his memorandum in opposition to Auto-Owners'

---

[10] To this end, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

[11] "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

7

summary judgment motion on January 28, 2025. (Doc. 20). Attached to it is a declaration (executed pursuant to 28 U.S.C. § 1746) by Jim Kinkaid. (Doc. 20-1).

Peters never noticed the deposition of Keith Lennex.

Auto-Owners contends that Peters "unnecessarily caused a delay" in the disposition of its summary judgment motion. (Doc. 21 PAGEID 250). And Auto-Owners vaguely complains that it incurred fees and expenses to prepare for the cancelled depositions. Inasmuch as Peters' Rule 56(d) motion was denied—albeit without prejudice to renew—and given that his memorandum in opposition was filed well beyond the twenty-one (21) days allotted under S.D. Ohio Civ. R. 7.2(a)(2), Auto-Owners urges the Court to regard its summary judgment motion as unopposed.

The Court will decline to do so, notwithstanding the Maislin firm's abrupt about-face as to the need for additional depositions. Auto-Owners cannot claim delay when the briefing period for its summary judgment motion closed *before the filing due date*. Moreover, any time (initially) spent preparing for Kinkaid's cross-examination was not lost; the docket reflects that Auto-Owners noticed Kinkaid's deposition for February 26, 2025, (*see* Doc. 22), after the close of briefing and presumably in preparation for trial.

**Duty to Cooperate.** Auto-Owners' policy includes a cooperation clause. "Generally, an insured's failure to cooperate may be raised by the insurer as a defense to liability." *Mobley v. Phila. Indem. Ins. Co.*, No. 3:04-cv-265, 2005 WL 8162660, at *6 (S.D. Ohio Nov. 16, 2005) (citing *Gabor v. State Farm Mut. Auto Ins. Co.*, 66 Ohio App.3d 141, 583 N.E.2d 1041 (Ohio App. Dist. 8th 1990)).[12] "In order to protect themselves from

---

[12] Peters acknowledged his obligation (as the insured) to cooperate with Auto-Owners during its investigation of his claim. (Doc. 15, Peters depo., PAGEID 164 (39:2–6) "(Q. . . So when you file an

false claims, insurers frequently include clauses in their policies which mandate cooperation by the insured in investigation a claim." *Id.* (quoting *Gabor*, 66 Ohio App.3d at 143, 583 N.E.2d at 1043)). "When such cooperation is a policy condition, and an insured fails to comply, the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate." *Id.* (quoting *Gabor*, 66 Ohio App.3d at 143, 583 N.E.2d at 1043)). "Whether an insured has violated the cooperation clause of his policy is a question to be determined in view of the facts and circumstances in each case." *Id.* (citing *Luntz v. Stern*, 135 Ohio St. 225, 20 N.E.2d 241 (Ohio 1939)). When a case presents undisputed facts, a court may decide the cooperation clause issue as a matter of law. *Id.* (citing *Luntz*, 135 Ohio St. at 237, 20 N.E.2d at 246–47)).

One other principle applies. "To constitute a defense to liability, an insured's lack of cooperation must result in material and substantial prejudice to the insurance company." *Gabor*, 66 Ohio App.3d at 144, 583 N.E.2d at 1043; *see Valley Paint & Body v. Ins. Co. of Pa.*, No. CA2010-08-059, 2011 WL 947034, at *2 (¶ 10) (Ohio App. 12th Dist. Mar. 21, 2011) (citing *FT Mortg. Cos. V. Williams*, No. CA2000-09-023, 2001 WL 1256360, at *4 (Ohio App. 12th Dist. Oct. 22, 2001) (citing *Gabor*)). Peters argues there is *no* prejudice, much less *material* and *substantial* prejudice. (*See* Doc. 20 PAGEID 238–39). Auto-Owners counters that its "prejudice cannot be understated, as it received information that there was potential manual manipulation of Plaintiff's roof shingles. Auto-Owners is prejudiced if it provides coverage for a claim that is the result of fraud, or otherwise not covered under the Policy." (Doc. 21 PAGEID 255–56).

---

insurance claim, as the insured, you have specific duties to cooperate with Auto-Owners in their investigation of the insurance claim, correct? A. Yes.")).

9

Auto-Owners is not entitled to summary judgment on this composite issue. True, a fact-finder might conclude that Peters was "silent" for five months and, accordingly, not cooperative. Yet it is undisputed that Peters provided access to his property (initially) to the claims adjuster and (later) to a forensic engineer, the opinion witness upon which Auto-Owners relies. Based on the engineer's report, Auto-Owners issued a Reservation of Rights letter and, ultimately, denied Peters' claim.

The idiom, "no harm, no foul," can't help but come to mind. Auto-Owners told Peters that it wanted "to gather further information, and discuss the findings of the Engineer report[.]" (*See, e.g.*, Doc. 15-3 PAGEID 192). This is nothing more than a general request. *Luntz* requires an Ohio insured "to make a fair and frank disclosure of information demanded by the company[.]" 135 Ohio St. at 225, 20 N.E.2d at 242, syl. ¶ 4. But a failure to comment on an unfavorable report is not the same as withholding information necessary for that report to be *written*. In the face of Peters' silence, Auto-Owners was able to investigate (and deny) his claim for property loss. There is no evidence that Peters obstructed the process, or that his lack of cooperation "substantially impaired" Auto-Owners from gathering evidence of concealment or fraud to present at trial. *See Weller v. Farris*, 125 Ohio App.3d 270, 276, 708 N.E.2d 271, 274 (Ohio App. 2d Dist. 1998) ("Prejudice has been described as involving material injury to the insurer's ability to contest the merits of the case, or serious impairment in investigating the claim or defending the merits of the case.") (citations omitted); *Enter. Rent-A-Car v. Southern*, No. A1202018 (A1207560 & A1209103), 2014 Ohio Misc. LEXIS 101, at *6–7 (Ct. Comm. Pl. Jan. 21, 2014) (citing *Weller*).

**Covered Cause of Loss**.  Auto-Owners devotes minimal attention (in its initial brief) to its position that Peters' claim is not a covered cause of loss—either because he "engaged in fraudulent conduct or misrepresentations" or has failed to refute the findings of Drew Knostman with his own expert.  (*See* Doc. 16 PAGEID 209–10).  Peters, on the other hand, faults Knostman for not venturing a guess as to who might have manually manipulated his roof.  (*See* Doc. 20 PAGEID 234).  This matters, because manual manipulation is tantamount to "vandalism"—a covered cause of loss under the policy.  (*Id.* PAGEID 235).  Peters attaches (to his brief *contra*) the declaration of his roofer, Jim Kinkaid, who opines that a windstorm caused the damage.  (*See* Doc. 20-1 ¶¶ 8, 9).  Kinkaid adds, "The damaged shingles shown in the photos provided by Auto Owners were not the result of manual manipulation but rather the result of wind damage because **we do not manipulate shingles and Mr. Peters is too infirm to get on the roof himself**."  (*Id.* ¶ 9(b) (bold emphasis added)).

Auto-Owners rightly rejects Peters' *ipso facto* logic.  And, in so doing, clarifies that Peters' purported failure to cooperate is the sole basis of its summary judgment motion.

> . . . However, Plaintiff misses the point here, as Auto-Owners did not file its Motion for Summary judgment on the basis that there is not a covered cause of loss.  Rather, Auto-Owners['] Motion is based on the undisputed evidence <u>that Plaintiff failed [to] meet his duty to cooperate with Auto-Owners as required by the Policy as he and his retained counsel failed to respond to Auto-Owners' multiple attempts to contact them as part of its investigation of the insurance claims</u>.  A declaration from Jim Kinkaid stating that he did not cause the damage on the subject roof, or the loss was caused by wind or vandalism, does not address the basis for which Auto-Owners moved for summary judgment.  Simply put, it does not matter if Mr. Kinkaid did or did not cause the damages.  It does not matter if Plaintiff, did or did not cause the damages.  The point is Auto-Owners, as the insurance carrier, was entitled to investigate the claim for roof damages and is entitled to gather as much information

> as possible from Plaintiff to determine what (or who) caused the damages. But as undisputed by Plaintiff's Response, Plaintiff never provided the requested information and thus failed to meet his obligation.

(Doc. 21 PAGEID 251 (underline emphasis in original)). Inasmuch as the Court already has examined the failure-to-cooperate premise at length, no further discussion is warranted.[13]

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 16) is hereby **DENIED**.

    **IT IS SO ORDERED.**

    /s/ *Michael R. Barrett*
    Michael R. Barrett, Judge
    United States District Court

---

[13] Auto-Owners curiously cites *Langhirt v. Auto-Owners Ins. Co.*, No 1:23-cv-441, 2025 WL 218835 (S.D. Ohio Jan. 16, 2025) as "on-point" authority. Not so. Judge McFarland considered whether Auto-Owners was entitled to summary judgment as to the insured's *bad-faith* claim. Because there was no evidence that Auto-Owners' actions in adjusting the claim were "arbitrary and capricious," there concomitantly was no genuine issue of material fact as to bad faith. (*Id.* at *4 (citing, *inter alia*, *Corbo Props, Ltd. v. Seneca Ins. Co., Inc.*, 771 F. Supp. 2d 877, 881–82 (N.D. Ohio 2011))). No bad-faith claim is pending in this case, however. (*See* 10/03/2024 Minute Entry and NOTATION ORDER, reading in part "Plaintiff moves to dismiss Count II (Bad Faith) of his Complaint; no objection by Defendant; pursuant to Fed. R. Civ. P. 21, Plaintiff's motion to (sever and) dismiss is hereby GRANTED, such that this civil action will proceed on Count I (Breach of Contract) only[.]").